Good morning, Council. One thing I did not say earlier, please remember that we have read the materials, so you don't need to recount the facts for us in great detail except in case you need it to make a point. So please get to your most important arguments first so that you're using your time wisely. Please tell us who you represent, your name and who you represent. Adrienne River My name is Adrienne River. I represent Karen Bailey. Sheila O'Grady Good morning, Your Honors. Assistant State's Attorney Sheila O'Grady, appearing on behalf of the people of the state of Illinois. Adrienne River Thank you. Sheila O'Grady Thank you. Adrienne River Whenever you're ready. Sheila O'Grady Thank you. Sheila O'Grady Good morning, Your Honors, Council. This morning I'd like to address primarily Issue 2, and then if there's time, briefly go to Issue 1, and of course I'm open to any questions you have. I would like to take no more than ten minutes so I can have at least my five minutes for rebuttal. Issue 2 was that the trial court denied Bailey a fair trial by mischaracterizing significant evidence, and I'm focusing in my argument today how that mischaracterization resulted in rejecting David's service as a credible defense witness. This case is all about the details. There's lots of evidence here, a lot of testimony about Mrs. Wilson's medical condition, a lot of details about David's service's knowledge as a family member of Mary Wilson's condition. He had frequent contact with her. If you contrast that to the state's evidence, their evidence about her condition is pretty much limited to two days, a hospitalization in May of 2004 and a hospitalization in May 2006. So it's David's service's testimony that's crucial here. It fills in the gaps, and it's crucial to the defense. All of this goes to the underlying question that we're talking about here is this woman's mental state at the time that she allegedly gave the power of attorney and whether she was capable of doing that. That's what we're really talking about. And there were two experts, two medical experts that basically said that it's not possible that this woman could have been cogent enough to give any kind of consent in either 2004 or 2006. And the trial judge heard that testimony. Why should we retry the case? That's what you're asking. I don't believe that's, with all respect, I don't think that's an accurate summary of the medical testimony. Then why don't you tell me what the medical testimony was as you see it? I see it that in 2004, she was admitted to the hospital, and Dr. Evans found that she was demented. And then there was testimony in 2006. At that point, it had, this was a slowly progressing dementia. At that point, it was severe. But Dr. Gaziano said, memory impairment, which is one of the symptoms in the syndrome, can occur on and off. People can have good days and bad days. People even in the severe stages of dementia are able to converse. So there's no testimony that she was never able to in this entire time period. Now, counsel, wasn't there testimony that to a reasonable degree of medical certainty whether this victim was able to consent in 2004? Wasn't there? Wasn't it testimony? Wasn't that question asked and answered in the file? If she could consent? If she was legally, or should I say mentally competent to consent. Dr. Evans said, did testify that she would not be competent to make financial decisions. First of all, he didn't give any time frame on that. Is he talking about in 2004? And keep in mind, he barely remembered this person. He first said, I didn't think she was demented. Then he referred to her nurse's notes. So these doctors are going by their notes, and they don't have any strong recollection of how she presented her hospitalization. So your basic argument is that the trial court should have rejected the medical testimony and accepted the testimony of David Service over the medical testimony. Is that your argument? Well, I'm raising, there's several different issues as far as the testimony of David Service. The argument is that because of her numerous errors in recollecting the evidence, the defense wasn't given a fair shake. She decided he wasn't credible for reasons that were I think the trial judge's job is to look at the witnesses and determine, that's the finder of facts job. That's what the finder of facts job is, that's what they do. They look at the witnesses and they decide who's credible and who's not. But if she expressly stated in her findings, here are the reasons why I'm finding him incredible, and if those reasons are all incorrect, and for example, then she's doing her job, but her job is denying the defense a fair trial. A woman is in prison for 11 years. We have a defense witness who says, I've known Mrs. Wilson all these years. She could speak. She knew what was going on. She told me, she said you could spend money on these various things. So if the trial court is Living in squalor. You know, I mean, there's some pretty strong stuff in here indicating, and now, you know, maybe some people have different habits, but not to this point, I don't think. Well, David Service indicated at one point in his testimony that there was a nurse there. There was an extensive testimony about that. A caseworker came in and he said on the days that he visited that there weren't unsanitary conditions. He said she even initiated a conversation in the hospital in May, you know, 6, when she severely demented at that point. So I don't think we can find that the guilt was proven by a reasonable doubt based on one witness's testimony that on a certain day that conditions were unsanitary. The issue is whether a person with a condition that can be, that's not necessarily progressive, linear. You can have good days and bad days. You go in and out. It's a slowly progressing condition. If that was, if the state proved beyond a reasonable doubt that at no point in this time could she be consenting to these transactions. Excuse me one moment. Yes. Your complaint is that David Service wasn't allowed to testify more fully? There's two. Because he's your only witness. He was your only witness. And from the record it seems to me that he testified rather extensively and thoroughly. I don't see how, I'm trying hard to see what your argument is as to how the court denied evidence and testimony and not denial of defendant's rights here. Well, there's, I mean, there's issue one. It's very not like that the court didn't accept it. The court didn't accept it and found otherwise. But he was certainly, he was given license to testify fully. Well, you know, I'm not asking the court to substitute its own credibility determination. My argument in issue two is that there were so many mischaracterizations of the evidence and the trial court explicitly said here's the reasons why I'm not finding credible. I don't have an argument if she is basing her credibility assessment on a correct recollection of the evidence. But for example, I think a very significant problem is that she says, well, David Service says that Wilson can talk. That's directly contradicted by the medical testimony. No doctor ever testified he's unable to talk. Dr. Gaziano counsel, that's, that's not entirely true. Wasn't there testimony that this, this lady had a swallowing disorder that sometimes caused her to be unable to speak clearly and she had this. It didn't, it should swap the money that she had a swallowing disorder that affected her speech. I think you should check the record. Yeah, there is such. She had a swallowing disorder. There was no test. That is not my recollection. And that would be, that would be inconsistent with Dr. Gaziano, Gaziano's own testimony that May of six that he noted that she spoke slowly. So this is this, there's no evidence that she had a complete inability to speak. A caseworker testimony of Ms. Williams, who said when she was called to the telephone on more than one occasion, she was incoherent. On one other occasion, the conversation is consistent of moaning and grunting. That doesn't sound like speech to me. Well, the Mrs. Williams had very little contact with Mrs. Wilson and. Mrs. Williams is the one that it sounded to me like she initiated a look see to see what was going on with this lady who was essentially lying in bed according to the testimony covered in her own urine and feces and other horrible conditions. So it's hard for me to understand how you can say that there wasn't sufficient testimony for the trial judge to come to this conclusion. I'm not, I'm not understanding your argument. I have to be honest. I'm just not getting. Well, if I can go back and address your question about the cousin of Mrs. Williams. Her testimony is very confused. At one point she doesn't even know what year she spoke to her on the phone. And I'm not taking the position that Mrs. Wilson could have good conversations every day. I'm basing it on the medical testimony that even a person with severe dementia could have a coherent conversation. So are we to assume that she was coherent, she happened to be coherent on the day that she signed the consent? I mean. It's the state's burden of proof. Well, the trial judge seemed to think the state met their burden. And you know, let me ask you this. What's the standard of review for your issue? What's the standard of review that we should be applying? Are you talking about the reasonable doubt issue or which issue? The issue number two that you've been arguing for the last ten minutes. What's the standard of review? Well, I think the standard of review is de novo as to the limited issue as to whether the trial court denied Bailey a fair trial by misrecollecting evidence. Either the evidence is incorrect or not. The standard of review is de novo? On that limited issue. I'm not arguing that she made an error in, I wouldn't be arguing that she made an error in assessing the credibility of David's service if she had gotten her facts right. But she said these are the reasons why I'm not finding them credible. A person would have difficulty communicating in all instances. That's not correct. She said Wilson, David's service couldn't even remember if he saw her sign a power of attorney. That's not correct. She said he was impeached because he said his parents bought him a truck. And she was confused about the basic relationships here. Well, his father was not dead and he said that he treated Wilson as his mother. There's a lot of confusion here. She said, I don't believe that he's shown any evidence of receipts. Well, that's not true. A defense exhibit was an invoice marked paid. I think at some point it gets ridiculous. There are so many errors and you're basing your rejection of the defense witness who in some ways consistent with the medical testimony is saying, yes, she could speak, she could communicate. I don't believe the medical testimony was that she could never speak at any point in that time period. The testimony was that they have to prove that she could never speak. I don't think that that was what they needed to prove. What they needed to prove was that she didn't have the capacity to consent to the defendant taking $300,000 of her money. That's what they had to prove and the trial judge seems to think they proved it. And I'm asking you to tell me why we should overrule the trial judge. Well, I made my argument on issue two that Bailey was denied a fair trial because the court made so many errors. I mean, we have to have a fair assessment based on the evidence that's presented. You're saying the trial court, correct me if I'm wrong, was in error in mischaracterizing certain testimonies. Is that what you're saying? Yes. And so you can't uphold this conviction if you agree that she made so many errors that she's denied a fair trial. Let her have another trial. Well, the error that you're claiming here was in David Service's testimony the court struck as hearsay some of his testimony. That's issue one. Now, clearly that standard would be an abuse of discretion on our review. Well, I think if she misunderstood the law of hearsay, that's a legal question to review de novo. Those are two. I mean, they're related. But they are separate issues. Number one is the trial judge may very well have been correct in her objections to the hearsay. And everything you're saying leads me to conclude you just don't like the fact that the court found the witness incredible. She read her testimony and decided otherwise. I don't like the fact that the trial court made that assessment based on numerous errors. It wasn't a question of her, like, who do I believe, what weight to give his testimony. The question was whether it was true that a doctor said that, for example, David Service's testimony that she could talk was directly contradicted by the medical testimony. That's not true. So at some point you get like a snowball effect. I mean, there's so many mistakes. And you're finding this guy incredible for the wrong reasons. I can't put any faith in her determination of whether he's credible or not. Well, you know, allegedly you wanted the court to conclude, oh, there's one statement that she said to him, you're going to freeze in that car. And they were trying to pitch to the trial court that this meant they had authority to go out and buy him a car. I mean, so much of that was just stretches. And I can't condemn the trial court for deciding otherwise, deciding the way it did. Well, that example, the context of that examination was, how was that car paid for? So I don't think that was a stretch. And if she can decide who to believe, but she has to understand. I mean, just because the person says, you know, you're going to freeze in that car, that means go out and buy a new car and I'm going to pay for it? Well, he did testify that she told him to, that he could purchase the car. And then the point is that we want the defense's denied opportunity to present the actual words of Mrs. Wilson. That's more powerful than a statement that she gave me the money. I mean, the defense was, this is serious allegations. The woman was in prison for 11 years. The defense was entitled to a fair assessment based on what was actually presented at the trial. Are there other questions? No, thank you. Thank you. Thank you. Thank you, Your Honors. Again, my name is Sheila O'Grady. I'm appearing on behalf of the people of the state of Illinois. The evidence at trial clearly established that over the course of nine months, defendant wiped out the life savings of Marianne Wilson of over $300,000. The defendant enriched herself with several large cash withdrawals by creating a fraudulent backdated power of attorney document. Defendant is now attempting on appeal to re-litigate issues that were properly decided by the trial court. The defendant's argument that the trial court mischaracterized portions of the evidence has been forfeited by plain error. There was no objection at trial to the trial court's findings and there was no post-trial motion raising these issues. In order to preserve this claim, defendant must show that either the error was so serious that it affected the fundamental fairness of the trial or that the evidence was closely balanced. Defendant has failed to meet either of the prongs set forth in Heron in order to preserve this claim for review. Again, this is just a, it's a prevention of the claim from being, but it does not prevent the court from reaching the merits of the issue. The standard of the review is an abuse of discretion. Whether the trial court abused its discretion in its determination that David Service's credible, excuse me, that David Service's testimony was not credible. Thank you for answering my question before I asked. I was going to ask you, what's your opinion of the standard of review? It is definitely an abuse of discretion. And the trial court's findings were all well supported by the evidence adduced at trial. The medical testimony by Dr. Evans was specifically that Ms. Wilson suffered from dysphagia, which is a swallowing disorder that does interfere with the ability to speak. Both Dr. Evans and Dr. Gaziano credibly testified at trial. Defendant is attempting to re-litigate a credibility determination by now again asking us to review the testimony of David Service against the testimony of Arnetta Williams and the medical doctors. The trial court had testimony that Ms. Wilson was demented, that strokes had damaged her brain all the way back in 2004. And there was specific testimony that Wilson had hand tremors, needed special feeding utensils, and had dysphagia. All defendants ascribed errors in the testimony in the trial court's recollection of David Service's testimony were all reasonable inferences made by the trial court. The credibility determination is solely the province of the trial court and the defendant is asking this court to substitute its judgment on a credibility determination and to ignore all of the other evidence in the case and to rely solely on selected excerpts of the trial court's findings. David Service was not credible where he made himself a witness to the fraudulent Power of Attorney document. The testimony at trial established that the forms were purchased in 2006 and Service testified that he was there when Mary Ann Wilson signed them in 2004. In her brief, defendant cites the cases of Bowie and Mitchell, both of which held that the trial judge did not remember or consider the crux of the defense, which is the test, in any mischaracterization of the evidence. In Bowie and Mitchell, both cases are readily factually distinguishable from the case at hand, where in both of those cases the trial judge did not consider the defense theory that was presented at trial. In this case, the theory that was presented at trial was that Mary Ann Wilson was able to consent to these purchases and the trial court clearly considered that testimony and clearly found it to be non-credible based on the medical testimony, based on the testimony of Arnetta Williams, and also based on the voluminous financial records that were supplied at trial that showed that over $300,000 disappeared in the course of nine months. If there are no further questions, then I ask that you affirm the defendant's conviction and sentence for these reasons and all those stated in our brief. Thank you. Thank you, counsel. Ms. River, a brief rebuttal, please. Yeah, just a couple of points. On the standard review, on Issue 2, I cited a case, a claim that implicates a defendant's right to a fair trial is reviewed de novo. I'm not asking for an assessment. This is not a question about whether we should defer to her credibility assessments, but whether in the first instance her credibility assessments were based on an incorrect recollection of the evidence. Let me ask you to respond to something that Ms. O'Grady said. Is it the responsibility of the prior fact to draw reasonable inferences from the evidence and testimony? Of course. And in this case, the inferences that the trial judge drew led her to a conclusion that Mr. Service couldn't possibly be telling the truth. What's wrong with that? What's wrong with that is that this Court should not be a rubber stamp just because we would never have appeals if in every case the conclusion would be well, the trial court, you know, did its job. Sometimes the trial court makes mistakes in doing its job. And she rejected David Service, the only witness who said that Mrs. Wilson was able to speak and knew what was going on. Counsel, when I'm talking about inferences, the totality of testimony and evidence in this case showed that we had an elderly woman. I don't think anybody can dispute that she clearly had dementia. The defendant began to take care of her and ingratiate herself to this elderly woman who was essentially cut off from the rest of her family and then over a period of nine months, her entire life savings, except for $4,000, disappears. And the beneficiary of some of that largesse is the person who was your only witness to testify that no, she was absolutely coherent when she gave this consent. I mean, what's wrong with the trial court coming to the conclusion that Mr. Service wasn't credible? He benefited from some of the defendant's behavior according to what the trial court found. Well, I mean, the state has a burden of proving an offense here. I would think there could be many situations where suspicious circumstances, a loved one authorized somebody else in the family to spend their money. We don't prove offenses based on mere amounts of money. And David Service was part of this family. He'd known Mrs. Wilson since he was a child. So that itself does not... The trial court clearly thought he was part of the best counsel. She did, but she gave numerous reasons why I don't believe him. And they weren't based on an accurate recollection of what he said and in some cases what the state's evidence was. So Mrs. Bailey is entitled to a fair trial based on an assessment of credibility with no errors. And this is not what happened. I mean, it's outrageous. It's just on and on and on. Well, this and this and this. And I want to just quickly talk about a dysphagia. The doctor said it is a swallowing disorder. There can be an inability or difficulty swallowing. It can cause speaking problems. There was never any testimony that one could never speak with this disorder. And there was no specific testimony about how this medical condition manifested in Mrs. Wilson. Well, with respect to that, I'd ask you, so what does that prove? I mean, that is one element, but, you know, this brings to mind the old saying that we all learned in law school, which is when you hear who speaks, you don't look for zebras, do you? I mean, this is one of those situations where the state put on a mountain of evidence that this elderly woman's money disappeared over nine months, and you're asking us to overrule the trial judge. And I am trying to... We have to write something. We talk about the law here. So if we have to write something, how would we write this so that it would be coherent and make sense? You could write it that she was denied a fair trial because of the mischaracterization of the evidence, and she should have a new trial. That's one of the options. There's relief requested of reversal of convictions, but that's not the only relief requested. Is that all? Thank you. This matter will be taken under advisement.